IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CHRISTINE J., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, <br><br> Defendant. | CIVIL ACTION NO. <br> 1:21-cv-01337-MLB-RDC |

**FINAL REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), adopting an Administrative Law Judge's ("ALJ") determination that she was not disabled within the meaning of the Social Security Act (the "Act"). For the reasons set forth below, the undersigned **RECOMMENDS** that the final decision of the Commissioner be **REVERSED and REMANDED** for further proceedings consistent with this decision.

**I. BACKGROUND**

In May 2019, Plaintiff protectively filed applications for child's insurance benefits and supplemental security income, alleging an onset date of November 25,

2016.[1]  (R. 246–58).  Plaintiff completed her GED and worked as an inventory auditor in November 2016.  (R. 282).  Plaintiff alleged that she was no longer able to work due to the following conditions: bipolar disorder, borderline personality disorder, autism spectrum disorder, narcissistic personality disorder, and generalized anxiety disorder.  (R. 281).  Her applications were denied initially and again on reconsideration.  (R. 92, 113, 132–33, 155–56).

On October 5, 2020, following a hearing, an ALJ further denied Plaintiff's application.  (R. 21–33).  The ALJ found that Plaintiff had the following severe impairments: bipolar II disorder, borderline personality disorder, post-traumatic stress disorder, generalized anxiety disorder, major depressive disorder, attention deficit hyperactivity disorder ("ADHD"), asthma, and opioid use dependence disorder.  (R. 24).  The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with non-exertional limitations.  (R. 25–26).  The ALJ found that she had no past relevant work.  (R. 31).  Relying on testimony from a vocational expert, the ALJ found that she was able to adjust to work that existed in significant numbers in the national economy.  (R. 32–33).  Accordingly, the ALJ found that Plaintiff was not disabled under the Act.  (R. 33).

---

[1] Plaintiff alleged that her disability began before her 22nd birthday.  (*See* R. 24, 246); 42 U.S.C. § 402 (d)(1)(B)(ii).

On February 8, 2021, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision final. (R. 1–3). Having exhausted all administrative remedies under the Act, Plaintiff filed the instant action seeking judicial review of the Commissioner's final decision.

## II. LEGAL STANDARDS

Social security disability proceedings are "inquisitorial rather than adversarial," meaning that it is "the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 111 (2000). That said, the individual seeking social security disability benefits bears the ultimate burden of proving she is disabled. *Pupo v. Comm'r, Soc. Sec. Admin.*, 17 F.4th 1054, 1060 (11th Cir. 2021).

A claimant is disabled if she is unable to engage in substantial gainful activity by reason of a medically determinable impairment that "can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). During the administrative process, the ALJ uses a five-step, sequential evaluation process to determine whether a claimant is disabled. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011); 20 C.F.R. § 416.9520(a). Under this process, the ALJ evaluates: (1) whether the claimant engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe

3

impairment meets or equals a listed impairment; (4) if not, whether the claimant has the RFC to perform past relevant work; and (5) if not, whether in light of the claimant's RFC, age, education, and work experience, there are other jobs the claimant can perform. *Phillips v. Barnhart*, 357 F.3d 1232, 1237–40 (11th Cir. 2004); 20 C.F.R. § 416.920(a). If the claimant is deemed not disabled at any step of this process, the inquiry ends. 20 C.F.R. § 416.920(a)(4).

Courts review *de novo* the legal principles upon which the Commissioner's final disability decision is based but review the resulting decision only to determine whether it is supported by substantial evidence in the record. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1358 (11th Cir. 2018). Substantial evidence is any relevant evidence, greater than a scintilla, that a reasonable person would accept as adequate to support a conclusion. *Id.* In reviewing for substantial evidence, this Court may not decide the facts anew, make credibility determinations, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Winschel*, 631 F.3d at 1178.

### III. DISCUSSION

Plaintiff asserts that the ALJ erred by not formulating an RFC that correctly assessed her limitations. Specifically, she argues that the ALJ erred by finding that she would be able to sustain an ordinary routine without special supervision when her treating psychiatrist, a reviewing agency physician, and another agency reviewer

opined that she would need special supervision to work. Plaintiff further argues that the ALJ erred by failing to consider an agency reviewer's opinion because the record does not specify that reviewer's credentials. In response, the Commissioner argues that the ALJ formulated the RFC on the evidence as a whole instead of relying on a state reviewing physician's opinion and the RFC is supported by substantial evidence. After careful consideration, the undersigned agrees with Plaintiff.

### A. Medical Opinions

Dr. Kambiz Aflatoon, Plaintiff's psychiatrist from May 2018 through November 2019, completed an assessment of her ability to do work-related activities in March 2019, noting the following, as relevant. (R. 2434–37). Plaintiff would be unable to meet competitive standards in the following abilities needed to do unskilled work: maintain attention for a two-hour segment; maintain regular attendance and be punctual within customary, usually strict tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being unduly distracted; and perform at a consistent pace without an unreasonable number and length of rest periods. (R. 2435). As to the abilities needed to do semiskilled and skilled work, Plaintiff would be unable to meet competitive standards in the ability to understand and remember detailed instructions; and as to abilities to do particular types of jobs, she would be unable to interact appropriately with the general public. (R. 2436). Dr. Aflatoon indicated

that stress intolerance was an issue and Plaintiff would find the following demands of work stressful: deadlines; working within a schedule; making decisions; exercising independent judgment; and completing tasks. (R. 2437).

Dr. Ralph Allsopp, a consultative examiner, evaluated Plaintiff on August 27, 2019 and noted the following. (R. 4290). During the mental status exam, Plaintiff's thoughts were illogical and not coherent, and she exhibited fair insight into her current functioning. (R. 4293). She had problems with some cognitive and memory tasks, including that she could not describe a specific current event, was unsure about the number of weeks in a year, she could repeat 7 digits forward and 4 digits backward, she was able to calculate serial 4s and 7s, and she calculated 2 out or 3 single-digit multiple problems and 0 of 2 simple word problems. (*Id.*). In his conclusions, Dr. Allsopp found that Plaintiff was able to understand basic information and instructions; she would likely require reminders for information after several minutes or hours; she was limited in her ability to carry out multi-step cognitive tasks, as well as to complete tasks in a timely manner; her ability to follow a work schedule was fair; she did not appear able to cope with even a low level of stress; and she had significant difficulty getting along with others. (R. 4295).

On October 21, 2019, Michelle Lyn[2] completed an RFC assessment of

---

[2] Neither Ms. Lyn's signature nor the record indicates whether she is a medical consultant, psychological consultant, or single decision maker. (*See* R. 90).

6

Plaintiff, which noted the following. (R. 108–11). Relevant here, as to Plaintiff's sustained concentration and persistence limitations, she was moderately limited in the abilities to carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule; maintain regular attendance; and be punctual within customary tolerances. (R. 109). In the additional explanation, Ms. Lyn noted that Plaintiff was generally able to maintain attention for brief two-hour periods but would have moderate difficulty with concentration over the course of an eight-hour workday, and she would be able to perform regular work-related duties but required supervision to maintain an ordinary routine. (R. 110–11).

On February 22, 2020, Dr. Robert Koontz, an agency examiner, completed a mental RFC capacity assessment of Plaintiff. (R. 151–54). Relevant here, as to her sustained concentration and persistence limitations, Plaintiff was not significantly limited in her abilities to carry out very short and simple instructions, sustain an ordinary routine without special supervision, work in coordination with or in proximity to others without being distracted by them, make simple work-related decisions, complete a normal workday and workweek without interruptions from psychologically-based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods; and was moderately limited in her abilities to carry out detailed instructions, maintain attention and concentration for

extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. (R. 152). When asked for additional explanation, Dr. Koontz found that Plaintiff was able to perform regular work-related duties but required supervision to maintain an ordinary routine; was able to interact in a one-on-one capacity with others; would do best in a setting where interaction with the general public, supervisors, and coworkers was limited due to increased symptoms when interacting with others; and was able to perform basic tasks independently but would have moderate difficulty with making progress on goals or planning independently as those needs became more complex. (R. 153). In a disability determination explanation at the reconsideration level, Dr. Koontz noted that Plaintiff had mild ability to understand, remember, or apply information; moderate ability to interact with others; moderation ability to concentrate, persist, or maintain pace; and moderate ability to adapt or manage herself. (R. 127).

**B. Written Decision**

The ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels with the following non-exertional limitations: occasional exposure to atmospheric conditions; she could understand, remember, and carry out simple instructions and make simple work-related decisions; she could sustain an ordinary routine without special supervision; she could work at a consistent pace throughout the workday but not at a production rate pace where each task must be

completed within a strict time deadline; she could tolerate occasional interaction with coworkers and supervisors and no interaction with the public; she had to work primarily with objects rather than people; and she could tolerate occasional changes in a routine work setting. (R. 25–26). The ALJ noted that she had considered Plaintiff's symptoms and the extent they could reasonably be accepted as consistent with the objective medical evidence, other evidence, the medical opinions, and prior administrative findings. (R. 26).

The ALJ found that, after careful consideration of the evidence, Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms but her statements concerning the intensity, persistence, and limiting effects of those symptoms was not entirely consistent with the medical evidence and other evidence in the record. (R. 27). Specifically, the ALJ found that the objective evidence in treatment notes did not support the level of severity of limitations alleged. (*Id.*). The ALJ found that, viewed as a whole, documentary evidence of Plaintiff's overall physical and mental treatment and findings were not indicative of disabling limitations and any limitations were accounted for in the RFC. (*Id.*). The ALJ noted that, during treatment with Dr. Aflatoon, Plaintiff consistently denied symptoms associated with her applications and numerous examination findings had been essentially normal. (R. 27–28.).

The ALJ also considered the medical opinions. She found that Dr. Aflatoon's opinion that Plaintiff had serious limitations in or no useful ability to function in ten areas of mental abilities and aptitudes was not persuasive, except as it related to complex tasks and interacting with the public. (R. 29). The ALJ found Dr. Aflatoon's opinion that Plaintiff was limited in her ability to handle simple, unskilled work was not persuasive because it was not supported by his own treatment records, which often showed no speech or language issues. (*Id.*).

The ALJ also concluded that Dr. Allsopp's opinion was not entirely persuasive. (R. 30). Specifically, she determined that Dr. Allsopp's opinion finding Plaintiff was unable to cope with stress was inconsistent with the record; he only examined Plaintiff once; and his examination findings and opinion were not a reflection of Plaintiff's longitudinal functioning. (*Id.*).

A similar conclusion was reached regarding Dr. Koontz's findings. The ALJ also found that Dr. Koontz's opinion was not entirely persuasive. (R. 31). While the ALJ found that his opinion was generally consistent with the record, his assessment of mild limitations in understanding, remembering, or applying information was inconsistent with Plaintiff's anxiety, panic attacks, and some mood changes that could impact her ability to function in those areas. (*Id.*).

In light of these conclusions, the ALJ found that the nature of Plaintiff's treatment, findings made during the course of her treatment, and her own statements

about her limitations did not support a more restrictive finding. (*Id.*). Accordingly, the ALJ concluded that the totality of the evidence supported Plaintiff's ability to perform the stated RFC. (R. 31).

### C. Analysis

A claimant's RFC assesses the "most" she can do despite her impairments. 20 C.F.R. § 416.945(a)(1). This assessment is used at step four to determine whether a claimant can return to her past relevant work, and if necessary, it is also used at step five to determine whether the claimant can perform any other work that exists in significant numbers in the national economy. *Id.* § 416.945(a)(5). The claimant's RFC is then used to determine her ability to perform at various designated levels of work (*i.e.*, sedentary, light, medium, heavy, or very heavy). *See id.* § 416.967. Ultimately, the ALJ must determine whether the claimant is disabled based on the evidence presented. *See id.* § 416.920(a)(3). In determining a claimant's RFC, the ALJ must consider all relevant evidence, including statements by medical sources. 20 C.F.R. § 416.945(a)(3).

In considering claims filed after March 27, 2017, the ALJ will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinions or administrative medical findings. 20 C.F.R. § 416.920c(a); *see Harner v. Soc. Sec. Admin., Comm'r*, — F.4th —, No. 21-12148, 2022 WL 2298528, at *3 (11th Cir. June 27, 2022) (affirming the new regulations that eliminate the treating

11

physician rule for claims filed after March 27, 2017).  When considering any medical opinions or administrative medical findings, the ALJ must consider: (1) the supportability of the objective medical evidence and supporting explanations; (2) the consistency of the medical opinion or prior administrative medical findings with the other record evidence; (3) the relationship of the medical source with the claimant; (4) the medical source's specialization; and (5) other factors, including evidence that a medical source has familiarity with other evidence in the claim.  20 C.F.R. § 416.920c(c).  The ALJ is only required to articulate how she considered the supportability and consistency factors.  *Id*. § 416.920c(b)(2). Nevertheless, the ALJ "will articulate how [she] considered the medical opinions and prior administrative medical findings." *Id.* § 416.920c(a).

An ALJ's failure to articulate the reasons in support of discounting a medical opinion prohibits the Court from determining whether the ALJ's ultimate decision is rational and supported by substantial evidence.  *See Winschel*, 631 F.3d at 1179 (applying the previous regulations); *Keeton v. Dep't of Health & Human Servs*., 21 F.3d 1064, 1066 (11th Cir. 1994) (holding that the ALJ's failure to give the reviewing court sufficient reasoning to determine whether she has conducted the proper legal analysis mandates reversal).

Here, substantial evidence does not support the ALJ's RFC finding.  While the regulations did not require the ALJ to adopt every limitation in an opinion just

because she found it persuasive, she was required to "articulate how [she] considered the medical opinions and prior administrative medical findings." *See* 20 C.F.R. § 416.920c(a). The undersigned finds that the ALJ's written decision leaves unclear what evidence she considered when discounting several opinions that found that Plaintiff required special supervision to sustain an ordinary routine.

As to the first opinion the ALJ discounted, Dr. Koontz opined, among other things, that Plaintiff would require special supervision to maintain an ordinary routine. When discussing Dr. Koontz's opinion, the ALJ noted several other limitations that Dr. Koontz found appropriate but did not include the supervision requirement in her summary of the opinion. (*Compare* R. 31, *with* R. 151–3). Then, the ALJ found that Dr. Koontz's opinion was not entirely persuasive because she believed a moderate limitation in Plaintiff's ability to understand, remember, or apply information was more appropriate due to her anxiety, panic attacks, and some mood changes. Thus, the ALJ found that Plaintiff was *more* limited than Dr. Koontz opined and yet did not explain why she did not adopt the special supervision limitation. (*See* R. 31); *Dempsey v. Comm'r of Soc. Sec.*, 454 F. App'x 729, 733 (11th Cir. 2011) (holding that an ALJ erred when finding that a plaintiff had no significant work-related mental limitations when he expressly discounted a medical opinion's finding regarding the number of days the plaintiff would miss due to her impairments but failed to address the same opinion's finding that the plaintiff's pain

and other symptoms would frequently interfere with the attention and concentration needed to perform simple work tasks).

The records the ALJ cites in support of her decision do not clear things up. While the ALJ noted that Dr. Aflatoon's mental status evaluations of Plaintiff were mostly benign, Dr. Aflatoon never expressly assessed Plaintiff's ability to concentrate. (*See* R. 2406–29, 4250–85, 4297–4320). He did, however, diagnose Plaintiff with ADHD, predominantly inattentive type. (R. 2406). A person with ADHD with symptoms of inattention may overlook or miss details and make seemingly careless mistakes at work or other activities; have difficulty sustaining attention during tasks; find it hard to follow through on instructions or duties in the workplace; be easily distracted by unrelated thoughts or stimuli; and be forgetful in daily activities.[3] Dr. Aflatoon prescribed Plaintiff Adderall[4] and adjusted her dosage in response to her reports that she had difficulty concentrating. (R. 2416–17, 4262–63). While Dr. Aflatoon appeared to credit Plaintiff's reports of difficulty concentrating based off his prescription and adjustment of Adderall, at those same visits, Dr. Aflatoon still noted benign mental status examinations—specifically

---

[3] *Attention-Deficit/Hyperactivity Disorder,* NATIONAL INSTITUTE OF MENTAL HEALTH, https://www.nimh.nih.gov/health/topics/attention-deficit-hyperactivity-disorder-adhd, (last revised Sept. 2021).

[4] Adderall is a combination of dextroamphetamine and amphetamine and is used to control symptoms of ADHD, specifically difficulty focusing, controlling actions, or remaining still or quiet.     *Dextroamphetamine     and     Amphetamine*,     MEDLINEPLUS, https://medlineplus.gov/druginfo/meds/a601234.html (last revised Apr. 15, 2019).

14

finding that her thinking was generally logical and her cognitive abilities were normal and intact. (*See id.*). Even when Plaintiff's therapist advised Dr. Aflatoon that Plaintiff sometimes abused her Adderall, he continued her prescription and gave it to her mother to dispense it. (R. 4274–75). Furthermore, Dr. Aflatoon advised Plaintiff to continue taking Adderall through his last appointment with her in November 2019. (R. 4304–20). Thus, the record shows that, at the very least, Dr. Aflatoon believed that the severity of Plaintiff's ADHD symptoms required medication.

Additionally, Dr. Aflatoon completed an assessment of Plaintiff's ability to complete work-related activities, and like Dr. Koontz, he believed Plaintiff would be unable to sustain an ordinary routine without special supervision. (*See* R. 2435). The ALJ discounted Dr. Aflatoon's opinion, finding that his opinion that Plaintiff would be limited in her ability to perform simple, unskilled work—including sustaining an ordinary routine without special supervision—was not supported by treatment notes that often showed no speech or language issues. However, Plaintiff's lack of speech or language issues did not relate to whether she was able to sustain an ordinary routine without special supervision. Moreover, the ALJ found Dr. Aflatoon's assessment was not consistent with his treatment records, again pointing to the benign mental status examinations and that Plaintiff sometimes denied psychotic, depressive, or anxiety symptoms. However, as discussed above,

15

Dr. Aflatoon never directly expressed an opinion on Plaintiff's ability to concentrate during those mental status examinations. Furthermore, Dr. Aflatoon's diagnosis of ADHD and continuous adjustment of Plaintiff's Adderall prescription suggests that he credited her reports of difficulty in concentrating.

Dr. Allsopp's finding that Plaintiff would likely require reminders regarding information after several minutes or hours was also consistent with Dr. Koontz's and Dr. Aflatoon's findings that Plaintiff required special supervision to sustain an ordinary routine. (*See* R. 4295). While the ALJ found that Dr. Allsopp's opinion was not entirely persuasive, she specifically disagreed with his finding that Plaintiff was unable to cope with stress. (R. 30). Once again, the ALJ did not express why she thought Plaintiff could sustain an ordinary routine without special supervision, despite the opinions of Drs. Koontz and Aflatoon that special supervision was necessary, and Dr. Allsopp's opinion that Plaintiff would require frequent reminders throughout a workday to stay on task.

Furthermore, Plaintiff received psychiatric care from medical providers at View Point Health. While the ALJ cited some records from Plaintiff's visits to View Point in her written decision, she appears to have ignored the providers' conclusions that Plaintiff had difficulty concentrating, was inattentive, had limited to poor insight, and exhibited impaired judgment. (*See* R. 2029, 2038, 2051); *see also Owens v. Heckler*, 748 F.2d 1511, 1514 (11th Cir. 1984) (holding that a reviewing

16

court must evaluate the ALJ's findings in light of the entire record, not only that evidence that supports her position). Moreover, the ALJ did not address what appears to be the most recent medical visit in the record on September 23, 2020 at Life Healing Center. (*See* R. 40). There, Corwin O. DeMattos, APRN, NP-C, noted that, as to Plaintiff's symptoms of ADHD, she needed supervision or frequent redirection. (*Id.*). NP DeMattos' examination revealed that Plaintiff was irritable, attentive, and tense; she was coherent and her associations were intact; her thinking was logical; her short- and long-term memory were intact; her insight into problems appeared fair; she suffered from anxiety; she was easily distracted, fidgety, and restless; and she failed to maintain eye contact. (R. 43). Thus, yet another medical provider's examination supports a finding that Plaintiff would require supervision to sustain an ordinary routine.

Similarly, while the ALJ noted that Plaintiff's subjective complaints did not support a more restrictive finding than that espoused in the RFC, Plaintiff's hearing testimony does not support that finding. Plaintiff testified that she could accept instructions from a supervisor, but it was hard for her to remember details. (R. 61). She testified that she had difficulty focusing and concentrating on simple tasks and estimated she would be off task and unable to focus and concentrate about 50% of a workday. (*Id.*). She also explained that it was difficult for her to stay on task, especially if her ADHD was untreated; she would be unable to concentrate on a

17

current task or would begin working on a new task before finishing a previous one. (R. 62). The ALJ did acknowledge portions of Plaintiff's hearing testimony but did not comment on the testimony regarding her difficulties in concentrating and remaining on task. (*See* R. 26). While the ALJ was not required to cite every piece of evidence in the record, a decision is not based on substantial evidence when it focuses on one aspect of the record while disregarding contrary evidence. *See McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986).

Finally, the mystery of Michelle Lyn's credentials adds another layer of uncertainty regarding the ALJ's decision. While the Commissioner contends that the Court must assume Ms. Lyn is a single decision maker because there are no credentials in her signature, the undersigned is not comfortable with that assumption. Especially when Ms. Lyn espoused that Plaintiff needed supervision to maintain an ordinary routine; an opinion the ALJ did not address. The ALJ also failed to explicitly address the supervision limitation when it was opined in two medical opinions (Dr. Koontz's and Dr. Aflatoon's), bolstered by a third medical opinion (Dr. Allsopp's), and corroborated in treatment notes by a medical provider who examined Plaintiff less than two weeks before the ALJ's decision (NP Matteo's). And while it is Plaintiff's burden to prove she is disabled, it was the ALJ's burden to develop the record. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) ("It is well-established that the ALJ has a basic duty to develop a full and fair

record."). Given that ambiguities already surround the ALJ's decision finding that Plaintiff did not require special supervision to sustain an ordinary routine, the missing information regarding Ms. Lyn's credentials is an omission this Court should not ignore. Moreover, the ALJ was "required to build an accurate and logical bridge from the evidence to his or her conclusion," and because it is not clear why she discounted opinions from Drs. Koontz and Aflatoon that Plaintiff required special supervision to sustain an ordinary routine or chose not to consider Ms. Lyn's opinion, substantial evidence does not support her decision. *See Mitchell v. Colvin*, No. 1:13-CV-02835-AJB, 2015 WL 1478776, at *14 (N.D. Ga. Mar. 30, 2015) (quotation marks omitted).

## IV. CONCLUSION

For the foregoing reasons, the undersigned **RECOMMENDS** that the final decision of the Commissioner be **REVERSED and REMANDED** for further proceedings consistent with this decision. Without affirming any aspect of the Commissioner's final decision, the undersigned further **RECOMMENDS** the following specific instructions on remand: the ALJ must (1) consider the medical opinions and prior administrative medical findings, including Ms. Lyn's opinion if she is a medical or psychological consultant; (2) articulate how she considered the medical opinions and administrative medical findings; and (3) if she finds that limitations in those opinions are not warranted, sufficiently explain why she

discounted them and support that explanation with substantial evidence. The Clerk is **DIRECTED** to terminate the reference to the Magistrate Judge.

IT IS SO **RECOMMENDED** on this 22nd day of July 2022.

*R. Cannon*
_____
REGINA D. CANNON
United States Magistrate Judge